IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CT-3008-BO

LACY LEE WILLIAMS,[1]          )
                               )
            Plaintiff,         )
                               )
      v.                       )          **ORDER**
                               )
CITY OF RALEIGH, et al.,       )
                               )
            Defendants.        )

Lacy Lee Williams ("plaintiff") filed this action pursuant to 42 U.S.C. § 1983. Pending

before the court at this time are plaintiff's motion for appointment of counsel [D.E. # 23], motion

for court order [D.E. # 33], and motion to dismiss and for sanctions [D.E. # 35]. Also before the

court is defendants' motion for summary judgment [D.E. # 25]. Plaintiff does not appear to have

responded to the summary judgment motion, however, the time in which to do so has run. The

matters are ripe for determination.

A.    Statement of the Facts

Plaintiff appears to have been a pre-trial detainee at the times relevant to this suit. He was

committed to the custody of the Sheriff of Wake County at the Wake County Jail. Plaintiff's

allegations center around his transfer to the North Carolina Department of Correction as a

Safekeeper. He contends that the transfer was a conspiracy and done in retaliation for filing

---

[1]Lacy Lee Williams has filed at least eleven separate civil rights suits in the Eastern
District of North Carolina. He is now subject to 28 U.S.C. section 1915(g), Williams v.
Sanders, No. 5:09-CT-3020-FL (J. Flanagan dismissed June 15, 2009), however, this case was
allowed to survive frivolity and is presently before the court on a summary judgment motion filed
by defendants.

grievances and asserting complaints.

Dr. Umesi, a licensed physician is employed as the Medical Director of Wake County Jail. Umesi Aff. ¶ 1. According to Dr. Umesi's affidavit, "Lacy Lee Williams, is quite simply a dangerous, difficult, manipulative and medically non-compliant inmate." Id. ¶ 2. Dr. Umesi state that "due to numerous incidents of refusing to take his blood sugar medication, refusing his blood sugar monitoring, manipulating his meals, and manipulating his exercise regiment, thereby increasing the brittleness of his blood sugar levels, it was, in [Dr. Umei's] opinion, medically necessary to transfer [Williams'] custody to the North Carolina Department of Correction as a Safekeeper pursuant to the authority of N.C.G.S. 162-39 and Orders for Safekeeping entered by Judges of the North Carolina General Court of Justice on December 19, 2007, March 7, 2008, and December 28, 2008." Id. ¶ 3. Dr. Umesi "never discussed Williams' Safekeeper transfers with the Sheriff of Wake County." Id. ¶ 4. Dr. Umesi also states that "[i]n over 20 years of medical practice and over 15 years in jail and prison medicine, [he] cannot recall any patient more manipulative and non-compliant than Lacy Lee Williams." Id. ¶ 5.

Alan D. Moore, Jail Administrative Officer, administers jail programs and record keeping which includes administering Safekeeper transfers to the NCDOC. Moore Aff. ¶ 1. Lacy Lee Williams is well-known to Moore. Id. ¶ 2. He is know to be dangerous, difficult, manipulative and medically non-compliant. Id. He continues to refuse to take his prescription medications resulting in the poor control of his diabetes. Id. He states that one of Lacy Lee Williams "favorite activities is to refuse to take his medications in an attempt to create deterioration in his medical condition so that he can demand immediate medical care or to be taken to the hospital." Id.

Due to Williams non-compliance with his prescribed medical regimen, he has been referred to the Jail Disciplinary Hearing Committee numerous times. Id. ¶ 3. On 12/31/08, he received 5

2

days of formal lockdown discipline for failure to follow staff directives to go to his assigned housing. On 12/11/08, he received 20 days of formal lockdown discipline for failure to comply with detention staff instructions. Id. On 11/25/08, he received 10 days of formal lockdown discipline for committing physical contact upon detention staff. Id. On 6/23/08, he received 20 days of formal lockdown discipline for misuse and abuse of prescribed medication. Id. On 11/26/07, he received 15 days of formal lockdown discipline for misuse of medication and failure to obey staff instructions. Id. On 11/9/07, he received 10 days of formal lockdown discipline for misuse and abuse of medication. Id. On October 26, 2007, the inmate received twenty-nine (29) "24-hour" lockdowns for jail rules violations between his initial admission to the Wake County Jail until his February 11, 2009, sentencing by the Superior Court of Wake County to over 10 years active imprisonment upon the consolidation of his kidnapping, strangulation and habitual felon charges. Id. The inmate is now serving his sentence in the North Carolina Department of Correction. Id.

It was necessary to transfer Mr. Williams' custody to the North Carolina Department of Correction as a Safekeeper pursuant to the authority of N.C.G.S.162-39 and Orders for Safekeeping entered by Judges of the North Carolina General Court of Justice on December 19, 2007, December 28, 2007, and March 7, 2008. Id. ¶ 4. The Safekeeping transfer on December 19, 2007 was requested by Dr. Umesi because Williams was refusing to take his diabetic medication. Id. The Safekeeping transfer on December 28, 2007, was requested by Detention Supervisors because Williams was a severe management problem. Id. The Safekeeper transfer on March 7, 2008, was requested by Dr. Umesi because of medical needs that could not be met in the Wake County Jail. Id.

Transfers to Safekeeping in the North Carolina Department of Correction are not permanent transfers and the inmates are either ordered back to the Wake County Jail on a date certain for a court

3

appearance on the face of the Safekeeping Order or, if no court date has been set, then the inmate is ordered to be returned to the Wake County Jail on the District Attorney's Request. Id. ¶ 5. Of course, the North Carolina Department of Correction can, on its own motion, return a Safekeeper to a County Jail if the authorized number of Safekeeper transfers (from around the state) within the DOC is exceeded. Id. In the case of Williams, the scheduled return on his three (3) Safekeeper Orders was listed as "On District Attorneys Request." Id.

On May 9, 2008, Williams was returned to the Wake County Jail by Order of Superior Court Judge Howard Manning so that Williams could appear in Superior Court the week of May 12, 2008. Id. ¶ 6. From the time of his return to the Wake County Jail on May 9, 2008, until he was sent to the North Carolina Department of Correction to begin his active sentence of imprisonment on February 11, 2009, Williams remained at the Wake County Jail. Id.

B.    Motion for Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 587.

4

The court can rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

Because of Lacy Lee Williams behavior, the state court entered transfer orders whereby he was transferred to the NCDOC as a Safekeeper. The transfers were not done in retaliation or as part of a conspiracy, but by state court order. The orders were entered in an attempt to provide plaintiff with medical care and to preclude him from interfering with the same.

Furthermore, if Williams is attempting to make a deliberate indifference claim, it also fails. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.[2] Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). The official, in order to be liable, must have actual knowledge or awareness of the need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The indifference must be objectively harmful enough to establish a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Delay in medical care, with no resulting injury, does not violate the Eighth Amendment, Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993), nor is a plaintiff entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Furthermore, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-06.

---

[2]To state a claim for inadequate medical care under 42 U.S.C. section 1983, a plaintiff must show deliberate indifference to his serious medical needs in violation of his Eighth Amendment right, if the individual is an incarcerated prisoner, and his Due Process rights, if the individual is a pretrial detainee. See Estelle v. Gamble, 429 U.S. 97 (1976). The standard under the Eighth Amendment and Due Process is the same.

The court finds that the medical care plaintiff has received has not infringed on his constitutionally protected rights. Plaintiff himself interfered with his medical care and in fact exacerbated his medical conditions.

Accordingly, defendants' motion for summary judgment is granted [D.E. # 25], and all other motions are DENIED as MOOT [D.E. # 20, 23, 33 and 35].

SO ORDERED, this the ___1___ day of ~~August~~ September 2009.

TERRENCE W. BOYLE
United States District Judge